WILLIAM H. LANNING ET AL., APPELLANTS, V. CITY OF
HASTINGS ET AL., APPELLEES.

FILED MAY 17, 1913.   No. 17,818.

1. **Municipal Corporations:** STREET IMPROVEMENTS: PAVEMENT.   In a
city of the first class having more than 5,000 and less than 25,000
inhabitants, a three-fifths majority of the owners of the foot-
frontage abutting on a street in a paving district may determine
the material to be used for paving; but, aside from that limita-
tion, all details of construction are left to the city council, and
are not made a basis of the consent of the property owners.

2. ———: ———: ASSESSMENT: BOARD OF EQUALIZATION: NOTICE:
PUBLICATION.   A notice of the time and place of the meeting of
the city council as a board of equalization to equalize special
assessments to pay for street paving, published in a newspaper
of general circulation within the city from the 17th to the 27th
of the month, inclusive, is a substantial compliance with the
provisions of section 83, art. III, ch. 13, Comp. St. 1911, which
provides for giving such a notice.

APPEAL from the district court for Adams county:
ERNEST B. PERRY, JUDGE.   *Affirmed.*

*J. W. James,* for appellants.

*McCreary & Danley, John M. Ragan, M. A. Hartigan,
Don C. Fouts* and *Strode & Root, contra.*

BARNES, J.

Action by William H. Lanning and five other resident
property owners and taxpayers of the city of Hastings to
enjoin the collection of certain paving taxes assessed and
levied against their lots abutting on Hastings avenue in
that city, and embraced in what is designated as paving
district No. 12.   A trial in the district court for Adams
county resulted in a judgment for the defendants, and the
plaintiffs have appealed.

1. Plaintiffs strenuously contend that the paving tax
in question should have been declared void, because of a

modification of the contract made by the city council before the paving in question was completed. It is conceded by all of the parties to the action that a proper petition was filed with the city council of the defendant city, who, acting thereon, created a paving district designated as district No. 12, which included the property of the plaintiffs; that the subsequent proceedings relating to the paving of the street called Hastings avenue, up to and including the letting of the contract for that purpose, were regular and valid in all respects. It appears that, when the work was nearly completed, it was interrupted by the inability of the contractor to procure the kind of material theretofore used, and thereupon a petition of the owners of more than three-fifths of the foot-frontage of the lots abutting on the avenue was presented to the city council, asking a modification of the contract, and a substitution of another kind of material of equally good quality. After a hearing on the petition the city council modified the contract to the extent of authorizing the contractor to complete the work by using paving bricks made by a firm of brickmakers carrying on their business in the city of Hastings, instead of another make which had theretofore been used for that purpose.

It is argued that, by the modification in question, the contract was abrogated, and, as a matter of law, was rendered void; that, because of that fact, the collection of the special taxes assessed against the property of the plaintiffs to pay for the paving in question should have been enjoined. It is conceded that brick was the material chosen by the lot-owners, and it appears that the only change or modification of the contract was to substitute another make of the same kind of material for the one that had theretofore been used by the contractor. The record contains no evidence showing, or in any way tending to show, that the material substituted was in any way different or inferior to that which the contractor had been using up to the time of the modification of which complaint is made. It also appears that, by using the substituted material, the

completion of the work was hastened, and there was a slight saving in the cost of construction, which inured to the benefit of all of the lot-owners, including the plaintiffs. No fraud in the transaction was shown, and the contract was substantially performed.

In *Weston v. Syracuse*, 158 N. Y. 274, 70 Am. St. Rep. 472, the city council modified a contract for the construction of a certain sewer in that city. The resolution modifying the contract waived performance, so far as the work done was not in conformity with the plans and specifications, and provided that the work should be completed in conformity with that already done. . The work was substantially performed according to the terms of the contract. In an action to recover the contract price, the court said: "The result of our examination of the charter of the city of Syracuse leads us to the conclusion that it does not place any limitations upon the powers of the common council in respect to such acts as the common council undertook to perform by means of the resolution in question. Aside from certain limitations that we need not specify, all details are left to the common council, and not made the basis of the consent of the property owners. The modification attempted, therefore, was within the power of the common council under the ruling of this court in *Meech v. City of Buffalo*, 29 N. Y. 198; *Moore v. City of Albany*, 98 N. Y. 396; and *Voght v. City of Buffalo*, 133 N. Y. 463."

Subdivision 55, sec. 48, art. III, ch. 13, Comp. St. 1911, which constitutes the charter of the city of Hastings, provides: "Whenever the owner of lots or lands abutting upon the streets, or alleys, within any paving district, representing a three-fifths of the feet-frontage thereon, shall petition the council to pave, repave, or macadamize such streets or alleys, it shall be the duty of the mayor and council to pave, repave, or macadamize the same, and in all cases of paving, or repaving or macadamizing, there shall be used such material as a majority of the owners shall determine upon; provided, the council shall be noti-

fied, in writing, by said owner, of such determination within thirty (30) days next after the passage and approval of the ordinance ordering such paving, repaving or macadamizing. In case such owners fail to designate the material they desire used in such paving, repaving, or macadamizing in the manner and within the time above provided, the mayor and council shall determine upon the material to be used."

With the exception of this provision, all details of the work are left to the city council, and are not made the basis of the consent of the property owners. It is true that the property owners petitioned the council to use brick as the material for paving the street in question. The prayer of the petition was granted, and brick was the material which was contracted for and used. By the modification complained of, there was no change of material. That substituted seems to have been equal in all respects to the kind of brick used up to the time the work was interrupted. As above stated, no fraud is alleged or proved in the transaction, but, on the contrary, it was shown that the change was a benefit to the plaintiffs in the way of lessening the cost of the construction. As we view the charter, it was within the power of the city council, when acting in good faith, and for the best interest of the taxpayers, to make the modification in question.

2. After the contract was completed, and the work was examined and accepted by the city council, a notice was given of the time and place of the meeting of the council as a board of equalization to equalize the special assessments, and levy a tax upon the property within the paving district to pay for the paving in question. The plaintiffs contend that this notice was insufficient and void, and did not authorize the board of equalization to make the assessments of which they complain. It is strenuously argued that the notice was not published for the length of time provided by the city charter. It appears that the notice was regular in form, and was published in a newspaper of general circulation in the city of Hastings, the

first publication being on the 17th day of November, 1911, and the last publication on the 27th of that month. The time of the meeting of the board was fixed at 7:30 P. M. of the last day of the published notice.

Section 83, art. III, ch. 13, Comp. St. 1911, provides for the sitting of the council as a board of equalization to equalize all special assessments, upon the giving of notice of any such sitting at least ten days prior thereto by publication in a newspaper having general circulation in the city. The general rule for computing time in such a case is to exclude the first day and include the last day of publication. The first publication of the notice in question was on the 17th day of November, and excluding that day and counting the 18th day of the month as the first publication, and including the last day thereof, it appears that the notice was published for ten days before the meeting of the board of equalization, and there is no merit in this contention.

3. Finally, it is contended that the assessment in question was not made according to benefits, for the reason the assessments were the same throughout the entire length of the paving district. There is no testimony in the record showing, or tending to show, that this course resulted in an improper assessment.

As we view the record, it contains no reversible error, and the judgment of the district court is

AFFIRMED.

REESE, C. J., FAWCETT and SEDGWICK, JJ., concur.

LETTON, ROSE and HAMER, JJ., not sitting.